FRY v IONIA SENTINEL-STANDARD

Docket No. 48559. Submitted October 8, 1980, at Grand Rapids.—
Decided November 20, 1980.

Peggy Jo Fry brought an action for herself and her two children
against the Ionia Sentinel-Standard for invasion of privacy and
intentional infliction of emotional distress arising from the
publication of a newspaper story concerning the accidental
death of her husband. Defendant published a newspaper report
of the death of Ted Fry, husband of plaintiff Peggy Jo and
father of Kimberly and Ted Fry, III. The article stated that a
body believed to be that of Ted Fry was removed from a fire-
destroyed cottage near Lake, Michigan. The report also indi-
cated that a second body, believed to be that of Rita Hill, was
also recovered. The automobiles of both individuals were found
nearby. The story included information provided by Wilma
Long that Fry and Hill were seen together at a local bar the
night prior to the fire. The article mentioned that Fry was a
partner with his wife in PJ's One-Stop Grocery Store and Gas
Station in Ionia, Michigan, and that the couple had two chil-
dren, Kimberly and Ted. Defendant moved for summary judg-
ment and the Ionia Circuit Court, Charles W. Simon, Jr., J.,
granted the motion. Plaintiff appeals. *Held:*

1. A motion for summary judgment based on a lack of a
genuine issue as to any material fact tests whether there is
factual support for a claim. In passing on the motion the court
must consider the pleadings, affidavits, depositions, admissions
and other documentary evidence then available to it, and in
granting the judgment the court must be satisfied that it is
impossible for the claim asserted to be supported by evidence at
trial.

2. An invasion of privacy claim may be grounded on the
public disclosure of embarrassing private facts about the plain-
tiff, if the disclosed information would be highly offensive to a
reasonable person and of no legitimate concern to the public.

REFERENCES FOR POINTS IN HEADNOTES
[1] 61 Am Jur 2d, Pleading § 229 *et seq.*
[2] 62 Am Jur 2d, Privacy § 11 *et seq.*
[3] 74 Am Jur 2d, Torts § 2.

The facts that plaintiff was Ted Fry's wife, that they were business partners and that Ted III and Kimberly were their children were all matters of public record. Further, the publication of their names and relationships cannot be considered offensive to a reasonable person.

3. The references to Rita Hill cannot support plaintiff's claim for invasion of privacy. They did not mention plaintiff or reflect adversely on her or the children.

4. One who, by extreme and outrageous conduct, intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. Liability is confined to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Defendant's conduct cannot be characterized as outrageous.

Affirmed.

1. JUDGMENTS — SUMMARY JUDGMENTS — COURT RULES.

A motion for summary judgment based on a lack of a genuine issue as to any material fact tests whether there is factual support for a claim; in passing on the motion, the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence then available to it, and in granting the judgment the court must be satisfied that it is impossible for the claim asserted to be supported by evidence at trial (GCR 1963, 117.2[3]).

2. PRIVACY — ACTIONS — INVASION OF PRIVACY.

An invasion of privacy claim may be grounded on the public disclosure of embarrassing private facts about the plaintiff, if the disclosed information would be highly offensive to a reasonable person and of no legitimate concern to the public; information of legitimate concern to the public includes matters regarded as news.

3. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

One who, by extreme and outrageous conduct, intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress; liability is confined to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

*Birch, Dean & Hluchaniuk,* for plaintiff.

*Welch, Nichols & Watt,* for defendant.

Before: R. M. MAHER, P.J., and R. B. BURNS and D. F. WALSH, JJ.

D. F. WALSH, J. Plaintiff brought an action against defendant newspaper for invasion of privacy and intentional infliction of emotional distress arising from the publication of a newspaper story concerning the accidental death of plaintiff's husband. Plaintiff appeals the trial court's entry of summary judgment in favor of defendant.

On January 31, 1978, defendant published a newspaper report of the death of Ted Fry, husband of plaintiff Peggy Jo Fry and father of Kimberly and Ted Fry, III. The article stated that a body believed to be that of Ted Fry was removed from a fire-destroyed cottage near Lake, Michigan. The report also indicated that a second body, believed to be that of Rita Hill, was also recovered. The automobiles of both individuals were found nearby. The story included information provided by Wilma Long that Fry and Hill were seen together at a local bar the night prior to the fire. The article mentioned that Fry was a partner with his wife in PJ's One-Stop Grocery Store and Gas Station in Ionia, Michigan, and that the couple had two children, Kimberly and Ted, III.

Defendant responded to plaintiff's allegations of invasion of privacy and intentional infliction of emotional distress by filing a motion for summary judgment. In ruling on the motion, the circuit court stated that any right of privacy of Ted Fry terminated upon his death. The court determined that plaintiff and her children had no reasonable expectation of privacy concerning the information in the article about their relation to one of the fire victims. In granting the summary judgment on the

claim of intentional infliction of emotional distress, the court found no tortious act on which plaintiff could base any recovery.

A motion for summary judgment which is based on GCR 1963, 117.2(3) is designed to test whether there is factual support for a claim. *Crowther v Ross Chemical & Manufacturing Co,* 42 Mich App 426; 202 NW2d 577 (1972). In passing on a motion under this subrule, the court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence then available to it. *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973). Before judgment may be granted, the court must be satisfied that it is impossible for the claim asserted to be supported by evidence at trial. The motion has the limited function of determining whether a material issue of fact exists. *Partrich v Muscat,* 84 Mich App 724; 270 NW2d 506 (1978).

Plaintiff argues that the trial court erred in its entry of summary judgment on the invasion of privacy claim because this tort involves a balance between the public's right to information of legitimate concern and the individual's right to avoid publication of private matters highly offensive to the average person. We find no error in the disposition by the circuit court.

An invasion of privacy claim can be grounded on the public disclosure of embarrassing private facts about the plaintiff. *Beaumont v Brown,* 401 Mich 80, 95 fn 10; 257 NW2d 522 (1977), citing Prosser, *Privacy,* 48 Cal L Rev 383, 389 (1960). This form of invasion of privacy[1] requires that the disclosed information be highly offensive to a reasonable person and of no legitimate concern to the public.

---

[1] A claim of invasion of privacy can also be based on an unreasonable intrusion on the seclusion of another, publicity that places one in a false light before the public and the appropriation of one's name or likeness. *Beaumont, supra,* 3 Restatement Torts 2d, § 652A, p 376.

3 Restatement Torts 2d, § 652D, p 383. The publicity, however, must concern the private, as distinguished from the public, life of the individual. The Restatement of Torts notes:

"There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public. Thus there is no liability for giving publicity to facts about the plaintiff's life that are matters of public record, such as the date of his birth, the fact of his marriage, his military record, the fact that he is admitted to the practice of medicine or is licensed to drive a taxicab, or the pleadings that he has filed in a lawsuit.

\* \* \*

"Similarly, there is no liability for giving further publicity to what the plaintiff himself leaves open to the public eye. Thus he normally cannot complain when his photograph is taken while he is walking down the public street and is published in the defendant's newspaper. Nor is his privacy invaded when the defendant gives publicity to a business or activity in which the plaintiff is engaged in dealing with the public." 3 Restatement Torts 2d, § 652D, comment b, pp 385-386.

Other jurisdictions have expressly adopted the above-quoted provisions of the Restatement. See, *Howard v Des Moines Register and Tribune Co,* 283 NW2d 289, 298 (Iowa, 1979), *Geisberger v Willuhn,* 72 Ill App 3d 435; 390 NE2d 945 (1979). In *Penokie v Michigan Technological University,* 93 Mich App 650, 661; 287 NW2d 304 (1979), this Court, in the interpretation of a provision of the Michigan Freedom of Information Act, highlighted the requirement that the disclosed information must relate to the private life of the individual.

Another limitation on an actionable invasion of privacy claim is the prerequisite that the matter be of no legitimate concern to the public. Informa-

tion of a legitimate concern to the public includes matters regarded as "news".

"Authorized publicity includes publications concerning homicide and other crimes, arrests, police raids, suicides, marriages and divorces, *accidents, fires,* catastrophes of nature, a death from the use of narcotics, a rare disease, the birth of a child to a twelve-year-old girl, the reappearance of one supposed to have been murdered years ago, a report to the police concerning the escape of a wild animal and many other similar matters of genuine, even if more or less deplorable, popular appeal." 3 Restatement Torts 2d, § 652D, comment g, pp 390-391. (Emphasis added.)

See also, Prosser, Torts (4th ed), § 118, pp 824-825.

In the case before us, the newspaper article mentioned that plaintiff was Ted Fry's wife and that they were business partners, and that Kimberly and Ted Fry, III, were Ted Fry's children. These were all matters of public record. As such, this information did not meet the threshold requirement that the facts exposed were kept hidden from the public eye. Further, publication of the names and relations of plaintiff and her children cannot be considered to be highly offensive to a reasonable person. They were merely mentioned as background information in a report of two fire-related deaths, a news account of legitimate concern to the public.

The section of the news article referring to Rita Hill also cannot support plaintiff's allegation of invasion of privacy. First, we note that an action for invasion of privacy cannot be maintained by a relative of the person concerned, unless that relative is brought into unjustifiable publicity. *Moore v Charles D Pierce Film Enterprises, Inc,* 589 SW2d 489, 491 (Tex Civ App, 1979), and cases cited therein; 3 Restatement Torts 2d, § 652I, p 403. The

references to Rita Hill were confined to her identification as one of the two bodies removed from the cottage. A positive identification of the bodies had not yet been made at the time the article was printed. The information that Rita Hill's automobile was located near the cottage and that she and Ted Fry were seen at a local bar the night before the fire was included as support for the conclusion that the bodies were those of the two named individuals. This portion of the newspaper story made no reference to plaintiff and did not reflect adversely on her. Therefore, the references to Rita Hill cannot be used to establish any invasion of plaintiff's privacy.

Also, the article merely stated that plaintiff's husband and Rita Hill were observed in a bar, a public place. As previously noted, no liability exists for giving further publicity to events within the public eye.

Since the publicized matters concerning plaintiff and her children were obtained from a public record, were not highly offensive to a reasonable person and were briefly mentioned in an article of legitimate public interest, we conclude that there was no factual support for plaintiff's claim of invasion of privacy. Therefore, the trial court did not err in granting defendant's motion for summary judgment.

Plaintiff also contends that the trial court improperly granted summary judgment in defendant's favor on the allegation of intentional infliction of emotional distress. We disagree.

A claim for intentional infliction of emotional distress has been defined as follows:

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional dis-

tress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Warren v June's Mobile Home Village & Sales, Inc,* 66 Mich App 386, 390; 239 NW2d 380 (1976), citing 1 Restatement Torts 2d, § 46, p 71.

Liability is confined to conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community". *Warren v June's Mobile Home Village & Sales, Inc, supra,* 391.

In *Ross v Burns,* 612 F2d 271 (CA 6, 1980), a newspaper reporter photographed an undercover police officer in a public place and published the photograph and a news article expressing strong views on a current political and philosophical controversy. In holding that the officer did not state a valid claim for intentional infliction of emotional distress, the Court stated:

"We cannot believe that these acts fall within the meaning of 'extreme and outrageous' conduct contemplated by the drafters of the Restatement." *Ross v Burns, supra,* 274.

Similarly, in the present case, we are of the view that defendant's conduct cannot be characterized as outrageous. The publication of the news account of fire-related deaths, including the names of relatives of the deceased, was not of an "extreme" character, as required for a valid cause of action. Since all of the evidence presented to the lower court, including defendant's affidavit, failed to substantiate plaintiff's allegation, we find no error in the court's entry of summary judgment on this count of the complaint.

Affirmed.