*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN M. SCHAUBROECK,

      Plaintiff-Appellant,

v

MICHIGAN STATE UNIVERSITY and
MICHIGAN STATE UNIVERSITY BOARD OF
TRUSTEES,

      Defendants-Appellees.

UNPUBLISHED
May 14, 2019

No. 345930
Court of Claims
LC No. 18-000016-MZ

Before: SWARTZLE, P.J., and M. J. KELLY and TUKEL, JJ.

PER CURIAM.

Plaintiff, John M. Schaubroeck, challenges the trial court's order denying his motion for summary disposition and granting a motion for summary disposition brought by defendants, Michigan State University (MSU) and the MSU Board of Trustees, under MCR 2.116(C)(10). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Schaubroeck began working as a professor at MSU in July 2008. He had a joint appointment in the Eli Broad College of Business's Department of Management and the College of Social Science's Department of Psychology. A 2012 memorandum of understanding memorialized the appointment of Schaubroeck as the John A. Hannah Chair of Management and Psychology. As a Hannah Professor, Schaubroeck's performance was subject to a five-year review. And, in accordance with the Broad College's policies and procedures governing review of named/endowed faculty positions, the Dean of the Broad College convened a committee to review Schaubroeck's performance.

The committee completed its review in January 2017, and in May 2017, the Deans of the Broad College of Business and the College of Social Science notified Schaubroeck of their decision to renew his appointment as Hannah Professor on a two-year probationary basis. The deans cited the review committee's finding that Schaubroeck's accomplishments did not meet the standards for the Hannah Professorship, the committee's recommendations, and their own

-1-

assessment. They further instructed Schaubroeck on several areas of improvement to ensure his reappointment at the end of the probationary period. In their letter, the deans stated the names of the members of the review committee.

Schaubroeck filed a FOIA request for the committee report in October 2017. Defendants denied the request, claiming that the Bullard-Plawecki Employee Right to Know Act, MCL 423.501 *et seq.*, protected the identities of persons making an employee reference and exempted disclosure of the report, and asserting that the report was exempt from disclosure because it contained communications within a public body that were advisory in nature, "cover[ed] other than purely factual materials," and were preliminary to a final determination. Schaubroeck appealed the decision, but the MSU President denied the appeal. Schaubroeck then filed a complaint in the Court of Claims, challenging the denial of the FOIA request.

The parties filed competing motions for summary disposition. Before ruling on the parties' motions, the trial court ordered defendants to produce a copy of the committee report under seal for an *in camera* review because MCL 15.243(1)(m) required the trial court to evaluate whether the document contained nonfactual matters. After reviewing the report, the trial court granted defendants' motion, denied Schaubroeck's motion, and produced a redacted copy of the report. In doing so, the trial court applied the frank communication exemption to FOIA, finding that the report was advisory in nature, was preliminary to the deans' probationary renewal decision, and that it contained other than purely factual matters. See MCL 15.243(1)(m). The trial court further determined that the deans' letter served the public interest in disclosure, so the public interest in confidentiality and encouraging frank communication outweighed the public interest in disclosure in this particular case. Consequently, the trial court redacted all nonfactual matters from the report.

Schaubroeck moved for reconsideration, arguing that the trial court palpably erred by failing to consider whether Schaubroeck was entitled to attorney fees and costs because he prevailed when the trial court released nonexempt portions of the report. Schaubroeck also asserted that the report should have been disclosed in full. Defendants opposed the request for attorney fees and costs. The trial court denied Schaubroeck's motion for reconsideration and declined to grant attorney fees and costs because Schaubroeck did not prevail on his central claim and because Schaubroeck only received a redacted copy of the committee report after the trial court raised the statutory basis for separating nonexempt from exempt material and producing the nonexempt material.

## II. FRANK-COMMUNICATIONS EXEMPTION

### A. STANDARD OF REVIEW

Schaubroeck argues that the committee report was not exempt from disclosure under the frank communication exemption, MCL 15.243(1)(m). Schaubroeck maintains that the committee report was not advisory in nature and was not preliminary to the deans' decision and that the public interest in disclosure was not outweighed by the public interest in confidentiality. This Court reviews de novo matters of statutory interpretation as well as a trial court's ruling on a motion for summary disposition. *Howell Ed Ass'n, MEA/NEA v Howell Bd of Ed*, 287 Mich App 228, 234; 789 NW2d 495 (2010). Summary disposition is proper under MCR 2.116(C)(10)

when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." When evaluating a motion for summary disposition under MCR 2.116(C)(10), the trial court considers the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact remains. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). In addition,

> the clear error standard of review is appropriate in FOIA cases where a party challenges the underlying facts that support the trial court's decision. In that case, the appellate court must defer to the trial court's view of the facts unless the appellate court is left with the definite and firm conviction that a mistake has been made by the trial court. . . . [W]hen an appellate court reviews a decision committed to the trial court's discretion, such as the balancing test at issue in [MCL 15.243(1)(m)], . . . the appellate court must review the discretionary determination for an abuse of discretion and cannot disturb the trial court's decision unless it falls outside the principled range of outcomes. [*Herald Co, Inc v Eastern Mich Univ Bd of Trustees*, 475 Mich 463, 472; 719 NW2d 19 (2006).]

## B. ANALYSIS

The purpose of FOIA is to make public records available to the people of this State to ensure that they are "informed so that they may fully participate in the democratic process." MCL 15.231(2). To that end, public records are generally available upon request unless specifically exempted. MCL 15.233(1). Because FOIA favors disclosure of public records, those exemptions should be interpreted narrowly. *Rataj v Romulus*, 306 Mich App 735, 748-749; 858 NW2d 116 (2014). The public body bears the burden of proving that the exemption applies. *Bukowski v Detroit*, 478 Mich 268, 274; 732 NW2d 75 (2007). In this case, Schaubroeck disputes the trial court's application of the frank communication exemption, which states in pertinent part:

> (1) A public body may exempt from disclosure as a public record under this act any of the following:

> * * *

> (m) Communications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action. This exemption does not apply unless the public body shows that in the particular instance the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosure. . . . [MCL 15.243(1)(m).]

A requested document is exempt from disclosure as a "frank communication" if "it (1) is a communication or note of an advisory nature made within a public body or between public bodies, (2) covers other than purely factual material, and (3) is preliminary to a final agency determination of policy or action." *Herald Co*, 475 Mich at 475. If "the document fails any of

-3-

these threshold qualifications, then the frank communication exemption simply does not apply." *Id*. If it does qualify as a frank communication, "the trial court must engage in the balancing test and determine if the public interest in encouraging frank communication clearly outweighs the public interest in disclosure." *Bukowski*, 478 Mich at 275. The parties and courts must "be cognizant of the competing interests at stake *in the particular instance*." *Herald Co*, 475 Mich at 474. In addition, our Supreme Court noted that "the Legislature decided that the public has an interest in *encouraging* frank communication so that public officials' *ongoing* and *future* willingness to communicate frankly in the course of reaching a final agency determination is an essential component in the balancing test." *Id*. Finally, in applying the frank communication exemption, the trial court must "separate the [exempt material] from the purely factual material and disclose the latter to [the] plaintiff." *Id*. at 482.

Schaubroeck argues that the committee report was not advisory. However, he overlooks the policies and procedures governing review of named/endowed positions, and he minimizes the contents of the deans' letter. Consistent with the review procedure, the deans appointed a review committee, the committee considered several documents, including Schaubroeck's statement, and the committee reviewed Schaubroeck's performance pursuant to the three main criteria for review. Further, the review procedure explicitly states that the "[t]he committee plays an advisory role to the Dean," and it directs the committee to provide the dean with a recommendation for or against renewal of the faculty member's placement in the named/endowed position. The unredacted text lists Schaubroeck's past accomplishments in two of those areas: research and scholarly contributions and external contributions. After the committee conducted its review, the deans notified Schaubroeck of their decision to renew Schaubroeck's professorship on a probationary basis. The deans summarized the committee's finding that Schaubroeck did not meet the expectations for the Hannah Professorship and stated that the committee's review and their own assessment led to their conclusion that Schaubroeck's performance fell below the standards of the Hannah Professorship and warranted renewal of the appointment on a two-year probationary basis.

Schaubroeck criticizes the deans' letter for including only one paragraph discussing his shortcomings, and he claims that the letter is inadequate to constitute independent review. Comparing this paragraph to the criteria listed in the policies and procedures shows that the deans considered each review criterion.

In the first category of research and scholarly contributions, the redacted committee report noted Schaubroeck's regular publications and an "uptick in output" in the prior year. The deans advised Schaubroeck to increase research productivity and pursuit of external grant funding where Schaubroeck would be the lead principal investigator, consistent with the higher expectations and lower teaching assignments for a Hannah Professor.

Second, regarding internal contributions, the deans directed Schaubroeck to increase engagement with other faculty and doctoral students at MSU conducting research and to bridge the relationship between the College of Business and the College of Social Science by attending meetings, mentoring doctoral students, and providing service and leadership in the University. The deans also instructed Schaubroeck to teach one doctoral seminar each year open to students of both colleges and to lead one major university-level or college-level initiative. Although the memorandum of understanding governing Schaubroeck's joint appointment stated that he was

not required to teach, the memorandum of understanding also instructed Schaubroeck to continue working with students in both departments. The dean's instruction that Schaubroeck teach one doctoral seminar per year open to students in both colleges identified a reasonable way for Schaubroeck to make internal contributions by working with students in both colleges, consistent with his joint appointment.

Third, in the area of external contributions, the committee report commended Schaubroeck for serving as an editor of a leading journal when he first started as a Hannah Professor and for speaking at other universities and professional meetings. The deans directed Schaubroeck to demonstrate leadership in the profession and identified editorships and Board memberships as examples of how to do so. It is possible to surmise from the deans' specific recommendations that the committee made certain findings or recommendations about shortcomings in Schaubroeck's performance. It is likewise clear that the review committee acted in an advisory capacity. Accordingly, the trial court did not clearly err by concluding that the committee report was advisory in nature.

Schaubroeck argues that the committee report was not preliminary to the deans' final decision because it was an actual performance review that was separate and distinct from the deans' final determination. Schaubroeck is correct that the committee report was a performance review. That review was conducted in accordance with the Broad College's policies and procedures for the review of a named/endowed faculty position. The review procedure directed the review committee to provide the dean with a recommendation for or against renewal of a named/endowed professorship. Therefore, the review committee generally reviews a faculty member's performance and makes a recommendation for or against renewal, while the dean makes the ultimate decision regarding renewal. Consistent with the review procedure, the deans used the committee report to reach a final determination, renewing Schaubroeck's Hannah Professorship on a two-year probationary basis. This procedure shows that the committee report was preliminary to the deans' decision.[1]

Lastly, the trial court in this case noted the public interest favoring frank communication among Schaubroeck's peers in assessing his performance on his own merits and relative to other professors. The trial court ruled that this interest "outweigh[ed] the public interest in disclosure in this particular instance" because of the detailed discussion in the deans' letter about Schaubroeck's performance and how he could improve his performance without making known the individual opinions of the members of the review committee. In *Herald Co*, 475 Mich at 481, the Supreme Court affirmed the conclusion that an independent and thorough audit of the financial expenditure on the Eastern Michigan University's President's house, which was the basis of a protected communication between a University Vice President and a member of the

---

[1] Schaubroeck contends that the trial court erroneously characterized the deans' letter as "one and the same as the performance review of" Schaubroeck reflected in the committee report. The trial court's opinion does not contain any such statement. Instead, the trial court determined that the committee report was a recommendation made to the deans, who made an independent decision about the professorship.

University's Board of Regents, "tipped the balance in favor of nondisclosure . . . ." In this case, Schaubroeck maintains that the deans' letter does not serve the public interest in disclosure because it contains no details about his performance. The deans' letter contains several recommendations, mirroring the criteria for evaluation, which were intended to allow Schaubroeck to address the shortcomings in his performance and continue as a Hannah Professor after the probationary period. Accordingly, the deans' letter contained ample information served by the public interest in disclosure, and Schaubroeck has not shown that the trial court abused its discretion by ruling that the interest in frank communication outweighed the interest in public disclosure because of the deans' letter.

Schaubroeck argues that the public interest in favor of disclosure in the context of peer review in public education generally outweighs the public interest in favor of confidentiality to encourage frank communication. Our Supreme Court warned against "speak[ing] in platitudes and generalities" when weighing these competing interests. *Id*. at 474. Here, Schaubroeck's generalized arguments fail to address the manifestation of the competing interests in this case. Further, his discussion about the confidentiality of the identities of peer reviewers in the context of MCL 15.243(1)(d) has no bearing on the balancing of interests required for MCL 15.243(1)(m). Likewise, Schaubroeck has not tied the United States Supreme Court's comment in *Univ of Pennsylvania v Equal Employment Opportunity Comm*, 493 US 182, 200-201; 110 S Ct 557; 107 L Ed 2d 571 (1990), that the possibility of disclosure is less likely to have a chilling effect on academics in the peer review context, to the particular circumstances of this case. Therefore, Schaubroeck has not shown that the trial court abused its discretion in its balancing of the competing public interests.

In sum, the trial court did not err by concluding that the committee report was advisory in nature and was preliminary to the deans' final determination, nor did the trial court abuse its discretion by determining that the public interest in confidentiality to encourage frank communication clearly outweighed the public interest in disclosure.

## III. ATTORNEY FEES AND COSTS

### A. STANDARD OF REVIEW

Schaubroeck argues that the trial court erred by denying his motion for reconsideration and his request for attorney fees and costs. We disagree. Although Schaubroeck consistently requested attorney fees and costs, he did not present the argument that he was entitled to attorney fees and costs by partially prevailing on his FOIA claim until he filed the motion for reconsideration. An argument first raised in a motion for reconsideration is not properly preserved. *King v Oakland Co Prosecutor*, 303 Mich App 222, 239; 842 NW2d 403 (2013). Accordingly, Schaubroeck did not preserve this argument. This Court reviews a trial court's denial of a motion for reconsideration for an abuse of discretion. *Id*. at 225. This Court reviews a trial court's ruling on a request for attorney fees and costs for an abuse of discretion. *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 647; 591 NW2d 393 (1998). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Nash Estate v Grand Haven*, 321 Mich App 587, 605; 909 NW2d 862 (2017) (quotation marks and citation omitted). This Court reviews an unpreserved issue "for plain error affecting substantial rights." *King*, 303 Mich App at 239.

## B. ANALYSIS

FOIA provides for an award of attorney fees and costs if the party who brought the FOIA lawsuit prevails. MCL 15.240(6). If the FOIA requester "prevails in part, the court may, in its discretion, award all or an appropriate portion of reasonable attorneys' fees, costs, and disbursements." MCL 15.240(6). Whether a party prevails on a FOIA claim turns on "whether: (1) the action was reasonably necessary to compel the disclosure; and (2) the action had the substantive causative effect on the delivery of the information to the plaintiff." *Local Area Watch v Grand Rapids*, 262 Mich App 136, 149; 683 NW2d 745 (2004) (quotation marks and citation omitted). This Court has held that a trial court does not abuse its discretion by declining to award any attorney fees or costs when the plaintiff only partially prevailed and did not prevail on the "central [FOIA] claim . . . ." *Id*. at 151. Moreover, "there is no merit to the argument that a trial court cannot exercise its discretion to determine that a plaintiff that prevails only partially in a FOIA action is not entitled to any attorney fees." *Nash Estate*, 321 Mich App at 606.

On appeal, Schaubroeck argues that attorney fees and costs are warranted because he obtained a redacted copy of the committee report. But because he only partially prevailed, the matter of attorney fees was committed to the trial court's discretion. See *id*. Moreover, as in *Local Area Watch*, Schaubroeck did not prevail on his central FOIA claim, which was that the committee report should be disclosed in full, with no part of it being exempted. Schaubroeck also asserts that the trial court clearly erred by denying his request for attorney fees and costs on the basis that the court, not Schaubroeck, set forth the legal authority causing a portion of the committee report to be disclosed. Other than calling the court's determination a "clear error" warranting reversal, Schaubroeck neglected to provide any legal authority in support of his argument, so the issue is abandoned. See *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 220; 761 NW2d 293 (2008). Thus, in sum, we conclude that as set forth in *Local Area Watch* and *Nash Estate*, the trial court had discretion to award no attorney fees or costs because Schaubroeck did not prevail in full and because the portion of his claim he did prevail upon was not his central FOIA claim. See *Local Area Watch*, 262 Mich App at 151; *Nash Estate*, 321 Mich App at 606. Accordingly, the trial court did not plainly err by refusing to award Schaubroeck attorney fees and costs.[2]

---

[2] The cases cited by Schaubroeck as "guidance" on awarding attorney fees when a plaintiff partially prevails on a FOIA claim have no precedential value. In *Kestenbaum v Mich State Univ*, 414 Mich 510, 565; 327 NW2d 783 (1982), the Supreme Court was equally divided, so Justice RYAN'S opinion has no precedential value. See *Int'l Union, United Plant Guard Workers of America v Dep't of State Police*, 422 Mich 432, 439 n 5; 373 NW2d (1985), mod 423 Mich 1205 (1985) (noting that an equally divided decision does not produce binding precedent). Additionally, this Court rejected a plaintiff's reliance on *Booth Newspapers, Inc v Kalamazoo Sch Dist*, 181 Mich App 752, 759-760; 450 NW2d 286 (1989), and *Dawkins v Dep't of Civil Service*, 130 Mich App 669, 674; 344 NW2d 43 (1983), because neither decision was binding precedent. See *Nash Estate*, 321 Mich App at 607 (citing MCR 7.215(J)(1)).

We affirm.

/s/ Brock A. Swartzle
/s/ Michael J. Kelly
/s/ Jonathan Tukel